# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PEDRO TORRES-SEGUI**<br><br>PLAINTIFF<br><br>VS.<br>**YRC INC. and/or YRC WORLDWIDE INC.;**<br>**NEW PENN MOTOR EXPRESS, LLC;**<br>**INSURANCE COMPANY XYZ;**<br>**COMPANY ABC;**<br>**JOHN & JANE DOE.**<br><br>DEFENDANTS | CIVIL NO. 20-1504<br><br>DISCRIMINATION BASED ON RACE; DISCRIMINATION BASED ON NATIONAL ORIGIN; WRONGFUL TERMINATION; AND TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW, Pedro Torres-Segui,** (Plaintiff), through the undersigned attorneys and very respectfully states, alleges and prays as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff worked for YRC, Inc. and/or YRC Worldwide, Inc. ("YRC") and New Penn Motor Express LLC ("New Penn") (jointly "Defendants") until his illegal termination in late October of 2020. Plaintiff dedicated approximately twenty (20) years of his life as a salesperson for Defendants, going far and beyond in achieving the Defendants' sales goal in the Puerto Rico market. As such, Plaintiff understood that he had inherent authority to utilize the company card of the Defendants as a negotiation strategy for the benefit of the Defendants and its continuing growth in the Puerto Rico market. However, in the summer of 2019, the Defendants began to create a hostile work environment by stripping Plaintiff of his duties and fabricating criminal accusations against the Plaintiff for his negotiation strategy without giving the Plaintiff any ample opportunity

to defend himself. After stripping the Plaintiff of his duties and fabricating criminal accusations against the Plaintiff without due process, the Defendants illegally terminated the Plaintiff in late October of 2020 even though Plaintiff worked for the benefit of the Defendants for the past twenty (20) years.

2. Such actions constitute a disparate treatment by the Defendants based on discrimination based on race and national origin pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), causing damages to the Plaintiff. After exhausting administrative remedies before the EEOC, the Plaintiff files this civil action against the Defendants for violation of federal and state anti-discrimination statutes.

3. Plaintiff files this civil action against the Defendants based on the following: Discrimination based on Race and National Origin pursuant to Title VII of the Civil Rights Act of 1964, 42 USC sec. 2000e-3(a) *et seq.*, Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.,* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a et seq.; Defamation based on the Libel and Slander Act of Puerto Rico and Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; and Tort Damages for False Imprisonment and Intentional Infliction of Emotional Distress pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

4. Plaintiff seeks compensatory, punitive, double and liquidated damages, severance pay, back pay, front pay, and equitable and injunctive relief for Defendants' unlawful and discriminatory employment termination of the Plaintiff, based on his race and national origin. In addition, Plaintiff seeks other specific remedies that restore him to the position that he would have held in the absence of the discrimination.

## JURISDICTION AND VENUE

5. The United States District Court for the District of Puerto Rico has jurisdiction over this action under 28 U.S.C. sec. 1331 since the matter of this civil action arises under the Constitution, laws, or treaties of the United States. Specifically, Plaintiff files this action pursuant to Title VII.

6. Plaintiff further invokes pendent or supplemental jurisdiction of this Court under 28 USC sec. 1367 to hear Puerto Rico constitutional and law claims arising from the same nucleus of operative facts. Specifically, Plaintiff files this action pursuant to Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.*, and Section 1 and Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a et seq.; Libel and Slander Act of Puerto Rico and Tort Damages pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

7. Pursuant to 28 U.S.C. sec. 1391 (a), venue is proper in the District of Puerto Rico because the events that justify the causes of action occurred in this district and the defendant resides within this judicial district.

8. Before filing this instant case, Plaintiff filed timely charges of discrimination before the EEOC within three hundred (300) days after the adverse employment action. A letter of determination and a notice of Right to Sue from the EEOC was received by the Plaintiff in late August of 2020. Plaintiff thus filed this timely Complaint within ninety (90) days of receipt of the EEOC's Notification of Right to Sue.

9. Plaintiff demands that all causes of action be tried before a jury.

**PARTIES**

10. Plaintiff, Pedro Torres-Segui ("Plaintiff") is of legal age, domiciled and resident of Bayamon, Puerto Rico. Plaintiff's address is the following: Urb. Santa Juanita, Calle 25 CC7, Bayamon, PR 00956.

11. Co-Defendants, YRC, Inc. and/or YRC Worldwide, Inc. ("YRC") and New Penn Motor Express LLC ("New Penn") (jointly "Defendants") are companies organized under the laws of Delaware and are duly authorized to do business in the Commonwealth of Puerto Rico. The Defendants are dedicated to the freight business and transportation business. Defendants' main business office address is 10990 Roe Ave., Overland Park, KS 66211. Defendants' designated office address and resident agent address in Puerto Rico is 361 San Francisco St., Penthouse, Old San Juan, PR 00901. Defendants' resident agent is CT Corporation System, Inc. Defendants constitute an integrated enterprise and are therefore to be considered as a single employer because of the degree of interrelationship, common ownership and control, common management, and the degree of centralization of labor relations and personnel functions at the Defendants' place of business.

12. Co-Defendant, Insurance Company XYZ (hereinafter referred to as "Insurance Company XYZ"), held an insurance policy in favor of the Defendants. At the time of the discriminatory incidents described herein, Insurance Company XYZ held an insurance policy in favor of the Defendants', specifically to cover said discrimination claims. Their current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

13. Co-Defendant, Company ABC (hereinafter referred to as "Company ABC"), is another business company, which is the parent company or an affiliated company of the

4

Defendants, that directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

14. Co-Defendant, John & Jane Doe (hereinafter referred to as "Doe"), is another agent, supervisor, official or director who is affiliated with the Defendants, who directed and had knowledge of Defendants' discriminatory acts of which Plaintiff is complaining. Their Current address is unknown. Plaintiff reserves the right to amend the Complaint once more information is discovered.

## THE FACTS

15. Plaintiff's race and national origin is Puerto Rican.

16. The Plaintiff began my employment with New Penn approximately in July 2000.

17. The Plaintiff began as a Sales Representative.

18. For more than a decade, the Plaintiff excelled at his duties as a Sales Representative without any type of disciplinary action.

19. The Plaintiff met New Penn's work expectations with regards to his sales performance.

20. Due to the Plaintiff's excellent job performance, the Plaintiff was promoted as Director of Caribbean Sales and Operations for New Penn approximately six (6) years ago.

21. After being promoted as Director of Caribbean Sales and Operations, the Plaintiff continued meeting and exceeding work expectations, such as being awarded Account Executive of the Year and receiving the President's Award Winner.

22. The Plaintiff's general duty as Director of Caribbean Sales and Operations was to achieve the sales goal of the business of the New Penn.

23. The Plaintiff achieved the sales goal through planning, coordinating and managing all operations of New Penn's vast network in the Caribbean.

24. In addition to these duties, the Plaintiff also had to maintain public relations with clients and suppliers of New Penn.

25. Therefore, during the last four (4) years as Director of Caribbean Sales and Operations, the Plaintiff started using the company card of New Penn to invite various clients and suppliers out for nighttime events as part of his negotiation strategy.

26. The Plaintiff understood that he had complete inherent authority as Director of Caribbean Sales and Operations to use the company card for these types of events.

27. Specifically, the Plaintiff invited clients and suppliers out for food, drinks and gentlemen clubs in order to keep them entertained and maintain their loyalty as clients and suppliers to New Penn.

28. The Plaintiff considered these expenses as public relations expenses. Notwithstanding, the Plaintiff would reimburse New Penn for these expenses for years.

29. The before mentioned negotiation strategy that the Plaintiff executed for the past four (4) years was approved by his supervisors and managers.

30. For more than four (4) years, the supervisors and managers approved the Plaintiff's expenses and accepted his reimbursement payments.

31. All these approved payments underwent a thorough process of verification in different stages within the New Penn's corporation.

32. At no time during the past four (4) years was the Plaintiff admonished or given a warning for these expenses and charges in the company card.

33. New Penn's Caribbean Division, under the Plaintiff's leadership, profited during

those four (4) years.

34. New Penn benefited out of the Plaintiff's public relations spending and generated over a million dollars ($1,000,000.00) in annual sales for more than five (5) years.

35. Recently, New Penn was acquired by YRC.

36. In the summer of 2019, YRC began to restructure the company.

37. As such, new supervisors were assigned to supervise the Plaintiff in the summer of 2019.

38. Even though the Plaintiff had an excellent performance and track record for the past four (4) years as Director of Caribbean Sales and Operations, the new supervisors began to create a hostile work environment in the summer of 2019.

39. These new supervisors began to strip the Plaintiff's duties and functions by cutting off all communications with the Plaintiff and creating an unreasonable work environment.

40. This made it difficult for the Plaintiff to comply with his duties to plan, coordinate and manage all operations of YRC's vast network in the Caribbean.

41. Finally, the new supervisors fabricated criminal accusations against the Plaintiff based on the negotiation strategy that the Plaintiff had been implementing for the past four (4) years.

42. Even though the Defendants had knowledge of the Plaintiff's public relations expenses and payment, which never resulted in admonishment or warnings towards the Plaintiff, the new supervisors accused the Plaintiff of unjustly enriching myself.

43. The new supervisors claimed that the Plaintiff was using the company card for food, drinks and gentlemen clubs for the Plaintiff's own personal benefit, when in fact, the Plaintiff was incurring in these expenses for the benefit of the company.

44. The Plaintiff was caught by surprise by these false accusations, because the Plaintiff has been using the company card for food, drinks and gentlemen clubs for approximately four (4) years without prior reprimands.

45. Specifically, the Plaintiff's prior supervisors never warned the Plaintiff against the use of the company card and they had knowledge of its use.

46. In fact, the Plaintiff's prior supervisors accepted the use of the company card for food, drinks and gentlemen clubs because they understood that the Plaintiff was meeting his duties as Director of Sales and Operations by spending in public relations and generating over a million dollars ($1,000,000.00) in annual sales for more than five (5) years.

47. Finally, the company always accepted the Plaintiff's reimbursements of said expenses.

48. In late October of 2019, the Plaintiff was illegally terminated by the Defendants.

49. In late October of 2019, the Plaintiff's new supervisors sent him a false invitation to Miami under the guise that it was an operational and sales meeting to coordinate and plan sales in the Caribbean.

50. When the Plaintiff got to the meeting, the Plaintiff was falsely imprisoned in a room with two persons who began to interrogate the Plaintiff in a manner that the Plaintiff felt demeaned and threatened.

51. They accused the Plaintiff of being a "spic thief", just like other Hispanics, and they threatened they would call the police to have the Plaintiff arrested.

52. They continued their threats saying that the Plaintiff would not leave the room unless the Plaintiff quit his position as Director of Caribbean Sales and Operations.

53. They falsely accused the Plaintiff of unjustly enriching himself based on his public

relations strategy.

54. The Plaintiff tried vainly to explain the true nature of his public relations strategy was for the benefit of the Defendants.

55. The Plaintiff was informed that he would be terminated from the company because he was a "spic thief".

56. The Plaintiff rejects these false accusations made against him.

57. The Plaintiff did not commit any type of violation with regards to his business practice because he honestly believed that he had the inherent authority as Director of Caribbean Sales and Operation to partake in public relations spending, which were publicly known by his prior supervisors during the last four (4) years.

58. The Plaintiff does not understand why the Defendants would order him to involuntary resign, when all his actions have been for the benefit of the Defendants.

59. If the Plaintiff would have resigned, it would have constituted a constructive dismissal.

60. Over the course of approximately twenty (20) years of employment, the Plaintiff was never reprimanded.

61. The Plaintiff was never suspended from his employment.

62. The Plaintiff always fulfilled and excelled at his duties, and such was reflected in all of his evaluations.

63. The Defendants' actions constitute an illegal action against the Plaintiff because they fabricated the false pretextual grounds for his illegal termination.

64. The Defendants did not provide the Plaintiff any opportunity whatsoever to meet and discuss with Human Resources and Upper Management to present his case regarding his

public relations expenditures, which were always accepted in the past without any warning, and his positive work performance that has always been for the benefit of the Defendants.

65. Finally, the Plaintiff sought unemployment benefits to the governmental agencies after his illegal termination.

66. Said agency determined that the Defendants had no legitimate reason to terminate him.

67. Defendants' adverse actions constitute an illegal action against the Plaintiff because 1) Defendants stripped the Plaintiff of his functions and duties, and 2) the Defendants fabricated the false accusations against the Plaintiff.

68. The Defendants stripped the Plaintiff's functions and duties and fabricated the false accusations against the Plaintiff because of his race and national origin as a Puerto Rican.

69. The Defendants illegally terminated the Plaintiff in violation of anti-discrimination under federal and state laws.

70. Company ABC was the parent company or an affiliated company of the Defendants. Company ABC had knowledge of Defendant's retaliatory and discriminatory decisions. Company ABC did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the Defendant. Company ABC allowed the Defendant to retaliate and discriminate against the Plaintiff, based on false pretextual grounds.

71. John & Jane Doe had knowledge of Defendant's retaliatory and discriminatory decisions. John & Jane Doe did not take any proper action to rectify and/or avoid the retaliatory and discriminatory actions incurred by the Defendant. John & Jane Doe allowed the Defendant to retaliate and discriminate against the Plaintiff, based on false pretextual grounds.

72. At the time of these retaliatory and discriminatory incidents, Insurance Company XYZ held an insurance policy in favor of the Defendant, specifically to cover said retaliatory and discriminatory claims. Said insurance policy was in force at the time of the retaliatory and discriminatory incidents.

73. Because of this illegal termination, the Plaintiff has suffered economic damages due to the deprivation of his compensation and benefits.

74. Because of this illegal termination, the Plaintiff has suffered emotional damages due to depression, lost sleep, rest and humiliation of his professional reputation. Plaintiff has been at loss of his peace of mind and emotional stability.

75. The Defendant is liable for all the Plaintiff's damages.

## FIRST CAUSE OF ACTION

## DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN

76. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

77. Defendants' discriminatory conduct altered Plaintiff's employment condition because of Plaintiff's race and national origin.

78. At the moment that the Defendants incurred in the discriminatory conduct, the Plaintiff was performing his job well enough to meet the Defendants' legitimate expectations.

79. Defendants' conduct against the Plaintiff constitutes discrimination based on race and national origin pursuant to Title VII. 42 USC sec. 2000e Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.,* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico.

80. As a proximate result of Defendants' discriminatory practice, Plaintiff has suffered intensely, has been deprived of his means of livelihood, has suffered economic losses and has been emotionally injured.

81. As a result of Defendants' discriminatory practices, Plaintiff lost the compensation and benefits he was entitled to.

82. Defendant is liable to Plaintiff for the back pay and front pay he was entitled had he maintained his position pursuant to Title VII and Law 100.

83. Plaintiff's compensation and benefits that were lost were approximately one hundred and twenty thousand dollars ($120,000.00) of annual salary, plus benefits.

84. Defendant is liable to the Plaintiff under this cause of action for all lost wages and fringe benefits that the Plaintiff has incurred from the date of the adverse employment action to the date on which damages are settled. Such back pay and front pay should include lost wages, pension benefits, insurance, vacation, profit sharing, accrued sick leave and other economic benefits of employment, plus prejudgment interest.

85. Pursuant to Title VII, Defendants' discriminatory practices against the Plaintiff were willful, malicious and/or carried with reckless indifference towards Plaintiff's rights protected under federal law. Plaintiff is thus entitled to punitive damages. This amount continues to increase with the passage of time and will be adjusted accordingly at the time of the trial.

86. In the alternative, an adequate remedy under PR Law No. 100, Defendant is liable to Plaintiff for double the amount of back pay, front pay and compensatory damages, without the need of establishing that there was a willful, malicious and/or reckless indifference towards Plaintiff's rights.

87. The adverse actions taken against the Plaintiff was the culmination of Defendant's discriminatory practice against the Plaintiff because of his race and national origin.

88. Defendant is liable to Plaintiff under this cause of action, pursuant to Title VII, PR Law 100 and the Constitution of the Commonwealth of Puerto Rico, in excess of two million dollars ($2,000,000.00).

89. In addition, Plaintiff is entitled to reinstatement and to an order forbidding any further discriminatory practices against him.

90. In addition to the remedies before mentioned, Plaintiff is entitled to double compensatory and statutory damages. As a result, thereof, Defendant is liable for double compensatory and statutory damages. These damages are estimated at no less than two million dollars ($2,000,000.00), which times two equals four million dollars ($4,000,000.00).

## SECOND CAUSE OF ACTION

## WRONGFUL TERMINATION

91. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

92. Defendant's actions constitute a termination of employment without just cause.

93. Defendant is liable to Plaintiff pursuant to P.R. Law No. 80, 29 LPRA sec. 185a *et seq*, for an amount equal to six (6) months of salary plus benefits, as defined in the law, and fifty-seven (57) additional weeks of compensation, based on his highest earning in any thirty-day period within the three years prior to the Plaintiff's dismissal. Therefore, the sum amount of severance pay under Law 80 is approximately two hundred and two thousand five hundred dollars ($202,500.00).

### THIRD CAUSE OF ACTION

### DEFAMATION

94. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

95. In addition to the before mentioned causes of action, the Defendants are liable to the Plaintiff for incurring in Defamation and/or their negligent handling of defamatory comments.

96. The Plaintiff was the victim of defamatory comments made by the Defendants.

97. These comments have been republished again and again after Plaintiff's illegal termination.

98. The defamatory comments consist on the fabricated criminal accusations against the Plaintiff in that Plaintiff misappropriated money from the Defendants.

99. The Plaintiff refutes these defamatory comments because all the money spent were business expenses for the benefit of the Defendants.

100. Plaintiff's reputation has been affected by these defamatory comments made by the Defendants.

101. These false and defamatory comments were made and published to third parties.

102. Plaintiff's damages cannot be reasonably calculated at this time, but are estimated in an amount no less than five hundred thousand dollars ($500,000.00) as just compensation for damages to his reputation because of the defamatory comments.

### FOURTH CAUSE OF ACTION

### TORTS DAMAGES FOR FALSE IMPRISONMENT

### AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

104. Defendant's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

105. Defendant is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

106. John & Jane Doe's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

107. John & Jane Doe are liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

108. Company ABC's actions constitute an act or omission which caused damage to Plaintiff. Said act or omission was incurred due to fault or negligence.

109. Company ABC is liable to Plaintiff pursuant to Article 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141.

110. All before mentioned Defendants are jointly and severally liable for their negligent and intentional tort actions.

111. As a result, thereof, Defendants are liable for compensatory and statutory damages pursuant to Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141, 5142. These damages are estimated at no less than five hundred thousand dollars ($500,000.00).

**FIFTH CAUSE OF ACTION**

**INSURANCE COMPANIES ARE JOINTLY AND SEVERALLY LIABLE**

112. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

113. Insurance Company XYZ is directly, jointly and severally liable, along with the other Co-defendants to the Plaintiff for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance.

### SIXTH CAUSE OF ACTION

### ATTORNEYS FEES AND PREJUDGMENT INTEREST

114. Plaintiff re-alleges each and every allegation stated in the preceding paragraphs as if fully set forth herein.

115. Defendant is liable to Plaintiff for attorney's fees and costs under Title VII.

116. Defendant is also liable to Plaintiff for attorney's fees under PR Law 100 and Law 80.

117. Defendant is liable for prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

### DEMAND FOR JURY TRIAL

118. Plaintiff demand a trial by jury as to all claims and issues alleged herein

### PRAYER

Wherefore, all allegations considered, Plaintiff prays that judgment be entered in their favor and against all Defendants', specifically:

1. Granting Plaintiff's Complaint against Defendants. This Court should grant Plaintiff's complaint and find that the Defendants are liable to the Plaintiff based on the following: Discrimination based on Race and National Origin pursuant to Title VII of the Civil Rights Act of 1964, 42 USC sec. 2000e-3(a) *et seq.*, Puerto Rico's Law No. 100 of June 30, 1959, 29 LPRA sec. 146 *et seq.,* and Section 1 of Article II of the Constitution of the Commonwealth of Puerto Rico; Wrongful Termination (Unjust Dismissal) pursuant

to Puerto Rico's Law No. 80 of May 30, 1976, 29 LPRA sec. 185a et seq.; Defamation based on the Libel and Slander Act of Puerto Rico and Section 8 of Article II of the Constitution of the Commonwealth of Puerto Rico; and Tort Damages for False Imprisonment and Intentional Infliction of Emotional Distress pursuant to Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 LPRA secs. 5141, 5142.

2. An order directing Defendants to reinstate Plaintiff to his former position and to cease and desist of any further retaliatory and discriminatory conduct on the basis of age and disability.

3. Awarding plaintiff back pay and front pay, together with interest, for the period that Plaintiff was deprived of his salary, as it was awarded to other employees in his previous position.

4. Awarding the Plaintiff punitive and liquidated damages equal to twice the back pay, front pay and fringe benefits lost by the Plaintiff.

5. Awarding the Plaintiff lost benefits, both past and future.

6. Awarding the Plaintiff the sum amounts before mentioned in the Complaint which includes the double compensatory damages.

7. Awarding Plaintiff reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements.

8. Awarding Plaintiff any and all other relief to which Plaintiff may be justly entitled.

**RESPECTFULLY SUBMITTED**: In San Juan, Puerto Rico on this 25th day of September, 2020.

*S/VICTOR M. RIVERA-RIOS*
VICTOR M. RIVERA-RIOS
USDC BAR NUMBER 301202
1420 FERNANDEZ JUNCOS AVE
SAN JUAN, PR 00909
Telephone: (787) 727-5710
Facsimile: (787) 268-1835
E-Mail: victorriverarios@rcrtrblaw.com