## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

<table>
<tr><td>Pedro Torres-Seguí<br>Plaintiff,<br><br><br>v.<br><br><br>YRC Inc. et al.<br>Defendants.</td><td>Civil No.  20-1504 (FAB-GLS)</td></tr>
</table>

### REPORT AND RECOMMENDATION

Plaintiff Pedro Torres-Seguí seeks relief for disparate treatment and hostile work environment based on national origin and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a) et seq., Puerto Rico's Law No. 100, and Section 1 of Article II of the Constitution of Puerto Rico. Docket No. 1. Torres asserts supplemental jurisdiction to claim redress under Puerto Rico laws for wrongful termination, defamation, false imprisonment, and intentional infliction of emotional distress. Id. Defendants YRC Inc., YRC Worldwide Inc. and New Penn Motor Express, LLC (collectively, "YRC") moved for summary judgment as to all claims alleging that Torres cannot establish a *prima facie* case of discrimination and that there was a legitimate non-discriminatory reason for Torres' termination. Docket No. 68. Torres claims that this is a case of direct evidence of discrimination and that the McDonnell Douglas framework is inapplicable. In the alternative, Torres sustains that he meets the Title VII *prima facie* case of discrimination, and that Defendants' purported reason for termination was a pretext for discrimination because he is Puerto Rican. Defendants' Motion for Summary Judgment was referred to the undesigned for a Report and Recommendation. Docket No. 82. For the reasons discussed below, the undersigned recommends that Defendants' Motion for Summary Judgment be **GRANTED**.

### I.    Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is considered genuine if "a reasonable jury, drawing favorable inferences [for the nonmovant], could resolve it in favor of the nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014)(citation omitted). A fact is "material" if it could potentially affect the outcome of the suit. American Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). However, "[c]onclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact." Velázquez-Pérez, 753 F.3d at 270 (citations omitted).

A party moving for summary judgment bears the burden of proving that there are no genuine issues of material fact and that judgment as a matter of law is warranted. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The moving party "may affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file […] that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir.2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317)). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Carmona, 215 F.3d at 133; Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015).

## II.    Uncontested Facts

Having reviewed the submissions by both sides, the Court finds that the following material facts are not in dispute:

1.    Torres began working for New Penn, a company dedicated to freight transportation and shipping of merchandise through land and sea, as a Sales Representative on July 10, 2000. Statement of Uncontested Facts at Docket No. 69 ("SUF") ¶¶ 3, 7, 8; Additional Statement of Material Facts at Docket No. 78-1 ("ASMF") ¶ 2.

2.    In 2011, Torres was promoted to the position of Caribbean Director of Sales and Operations. Torres was responsible for the sales and operations of the terminal in Puerto Rico. SUF ¶¶ 15, 18.

3.    In or around 2014, Torres was given a corporate credit card. SUF ¶¶ 19, 67.

4.    YRC's Policy on Meals and Entertainment provides guidelines and establishes procedures for employees who pay for business entertainment on behalf of the Company. The policy states that "employees entertaining customers […] are

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

expected to exercise good judgment and professionalism in selecting appropriate entertainment venues" and lists the following expenses as reimbursable: concert and theater tickets, sporting events tickets, tennis court fees, golf green fees, transportation to and from events, meals and beverages consumed at events. Employees who fail to comply with this policy are subject to corrective action up to and including termination and monetary restitution. SUF ¶ 25.

5.    YRC's Code of Business Conduct establishes that YRC may provide its customers "appropriate entertainment" to build good working relationships; however, good judgment, discretion and moderation should always be the employee's guide. Docket No. 69-8, p. 8. The Code defines "entertainment" as "hospitality or events that both [the employee] and [the employee's] guest or host attend, such as meals, drinks, sporting events or concer[t]s" and it may be offered in a "business-appropriate setting." SUF ¶ 29.

6.    YRC's Policy on Expense Reporting establishes that entertainment expenses are to be charged to the Company's credit card and establishes the information that employees are required to submit with the expense reports. Employees who fail to comply with this policy are subject to corrective action up to and including termination and monetary restitution. SUF ¶ 26.

7.    YRC's Policy on Corporate Credit Cards provides guidelines and establishes procedures for employees who incur in expenses such as business entertainment on behalf of the Company. This policy requires that the card use be directly related to company business transactions. Employees who fail to comply with this policy are subject to corrective action up to and including termination and monetary restitution. SUF ¶¶ 27, 39.

8.    YRC's Policy on Corporate Credit Cards requires that expenses be reported in the Company's expense reporting system at least every ten (10) days. The Policy also states: "at no time should a corporate visas card transaction be allowed to age more than 20 days without being submitted for approval. Unprocessed transactions older than 20 days are subject to a finance charge. The assessed finance charge is the responsibility of the cardholder." SUF ¶ 27; Docket 69-7.

9.    Pursuant to Defendants' arrangement with Citizen's Bank— the Company's credit card company since on or about November 2018— Defendants paid the full balance of the Company's account, regardless of the employee's submission for the expense. The Company would follow up with the employee regarding any unreported or personal expense. SUF ¶ 48.

10.   Defendants use the Coupa System to manage business expenses. Coupa is a system used by employees to report and classify business expenses and for supervisors to review and approve the expense reports generated by employees. SUF ¶ 37.

3

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

11. Once an employee uses the corporate credit card, the Coupa System adds the details of the transaction to the employee's account. SUF ¶ 38.

12. Entries in the Coupa system could be left as draft to be submitted later. SUF ¶ 42. Charges in the Coupa platform that appear in "draft" status are charges that were automatically generated but have not been submitted for review and approval. Mitchell Keith Lilly's Statement Under Penalty of Perjury at Docket No. 69-3 ("K. Lilly's Statement") at ¶¶ 9-10.[1]

13. Once the employee is prepared to submit an expense report, the employee must submit it through the Coupa System for supervisor review and approval. SUF ¶ 43.

14. The Bulon Group is a gentlemen's club (also known as a strip club) by the name of D'Girls. Torres went to this strip club with customers and charged drinks, food, and dances to the corporate credit card. SUF ¶ 53-55; ASMF ¶ 26.

15. Jason Dekker began supervising Torres in 2016. SUF ¶ 12.

16. Keith Lilly, Area Vice-President of Operations, began supervising Torres in the summer of 2019. SUF ¶ 77. Lilly supervised around 15 terminal managers, including Torres and Ángel Colón. SUF ¶ 78. Lilly met Torres over the phone because his office was in Georgia. ASMF ¶¶ 111, 184.

17. Torres won awards such as the Presidential Award, Top Account, and Top Account Executive of the Year in 2017 and 2018. ASMF ¶ 48.

18. On October 9, 2019, Steven Miller, Accounts Payable Supervisor for YRC Worldwide, emailed Lilly indicating that Torres had over $25,000 in expenses, incurred from May to September 2019, in draft in the Coupa System. SUF ¶ 81; Docket No. 69-17.

19. Lilly contacted YRC's Security Department and informed about the unprocessed credit card charges for investigation. SUF ¶¶ 82-83.

20. Pursuant to the investigation conducted by YRC's Security personnel, most of the charges to the company credit were to a company identified as the Bulon Group since May 2019, with several daily charges of $300 and $400 per transaction. It was also found that Torres had not completed the required expense reports. Docket No. 69-16.

---

[1] Plaintiff alleges that K. Lilly's Statement is a "sham" affidavit and should be disregarded by the Court as it contradicts prior testimony. Plaintiff does not point the Court to the purported contradictions in Lilly's testimony. There is no basis for the Court to reject the statement.

21.    Lilly did not receive a notification of the expenses incurred by Torres regarding the Bulon Group because they remained as drafts. Since the expenses remained in draft status, they were not submitted for Lilly's review. SUF ¶ 74.

22.    On October 21, 2019, Lilly met with Torres in YRC's Miami terminal. SUF ¶ 84. This was the first time that Lilly saw Torres in person. ASMF ¶ 132.

23.    Neil Smith and Rodney Betts from YRC's Security Department were also present at the meeting. SUF ¶ 84.

24.    Torres was confronted with the corporate credit card charges to the Bulon Group for which expense reports were not submitted. SUF ¶ 85.

25.    Torres admitted that he used the credit card in the Bulon Group. SUF ¶ 86; Docket No. 78-7, Plaintiff's Deposition at p. 114.

26.    Lilly informed Torres that he had been terminated from employment. SUF ¶ 89.

27.    Torres was replaced by Ángel Colón, who is Puerto Rican. SUF ¶¶ 91-92.

28.    Torres' salary was not decreased, and his benefits were not altered after June 2019. SUF ¶ 14.

29.    YRC has "Equal Employment Opportunity and Affirmative Action Policies" in place, which prohibit discrimination based on race and national origin. SUF ¶ 32.

30.    YRC's Full-Time Salaried Employee Policy prohibits discrimination based on race and national origin and provides an ethics hotline for employees to communicate openly and safely with the company's management by maintaining anonymity and confidentiality. Docket No. 69-10, pp. 3-5.

31.    Torres knew he had to comply with all YRC policies. SUF ¶ 35. Torres did not file a discrimination complaint against Lilly. ASMF ¶ 126; SUF ¶ 122.

### III.    Discussion

**A.    Title VII**

**1.  National Origin**

Title VII prohibits employers from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). A discrimination claim under Title VII may be established through direct evidence of discrimination. Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002). Direct evidence "is evidence which, in and of itself,

shows a discriminatory animus". Jackson v. Harvard University, 900 F.2d 464, 467 (1st Cir. 1990). This "consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996)(remarks must be linked to adverse employment action). To prevail on direct evidence of discrimination, the discriminatory statements must provide a "high degree of assurance" that a termination was due to a discriminatory motive. Patten, 300 F.3d at 25. "'[S]tray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself' do not qualify as direct evidence." Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 51 (1st Cir. 2021) (citing Ayala Gerena, 95 F.3d at 96). Moreover, statements that are "inherently ambiguous", which may be interpreted in different ways, are not direct evidence of discrimination. Patten, 300 F.3d at 25 (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 583 (1st Cir. 1999)). "A statement is inherently ambiguous if, viewed in context, it is subject to be interpreted in a benign, non-discriminatory way". Zampierollo, 999 F.3d at 56 (citing Patten, 300 F.3d at 25-26). Direct evidence is "relatively rare", although not insurmountable. Patten, 300 F.3d at 25 (quoting Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 580 (1st Cir. 1999)).

The arguments set forth by Torres in opposition to the request for summary judgment and in support of his national origin discrimination claim are the following: (1) as soon he began being supervised by Lilly and Haney in the summer of 2019, he was stripped off his duties as he was no longer allowed to negotiate rates for customers and was excluded from daily calls with terminal managers; (2) Lilly made fun of Torres' accent every time they spoke on the phone and made references to Mexican slang by saying "ándale, ándale, ándale", which made Torres feel that he was confusing him with a Mexican; (3) during the meeting in Miami, Torres was subject to mockery due to his accent when Lilly and the two employees from YRC's Security Department said to him "comprende"; (4) during the meeting in Miami, one of the employees from YRC's Security Department called Torres a "fucking spic" and a "spic thief"; and (5) that he was falsely accused of using the corporate credit card for personal reasons. Torres sustains that the foregoing is direct evidence of discrimination. The Court disagrees.

The First Circuit has held that direct evidence of discrimination consists of remarks made by decision-makers that can only be interpreted as discriminatory or outright admissions by the

employer that evidence the discrimination animus. See Kirk v. Hitchcock Clinic, 261 F.3d 75, 79 (1st Cir. 2001); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996)(direct evidence of discriminatory motive is "an admission by the employer that it explicitly took [the protected category] into account in reaching an employment decision"); Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 65 (1st Cir. 2002). There being no evidence of admissions by YRC that could constitute evidence of a discriminatory animus, Torres' direct discrimination claim rests on purported remarks made during his employment. The remarks allegedly made to Torres were: (1) Lilly saying "ándale, ándale, ándale" over the phone; (2) Lilly and YRC employees from the Security Department saying "comprende" in the Miami meeting, and (3) being called a "fucking spic" or "spic thief" by one of the employees from YRC's Security Department.

Torres admitted that the remark of him being referred to as a "spic" was not made by Lilly but by the employee from YRC's Security Department who identified himself as a former cop. See Docket No. 78-7, Plaintiff's Deposition, p. 132. But personnel from YRC's Security Department do not have authority to terminate employees. See Docket No. 78-5, Deposition M. Lilly, p. 67; Docket No. 78-6, Deposition R. Betts, pp. 53-54. Comments by such non-decision makers cannot be considered direct evidence of discrimination. Ayala Gerena, 95 F.3d at 96. This leaves Torres with Lilly's purported mockery of his accent when using phrases such as "ándale, ándale, ándale" and "comprende". That Lilly made any remarks as to Torres' accent is contested. See ASMF ¶ 130; Docket 78-5; Deposition K. Lilly, p. 68. However, even drawing all inferences in favor of Plaintiff, the Court deems that these phrases are inherently ambiguous, subject to interpretation, and insufficient to constitute direct evidence of discrimination. These phrases literally mean "go, go, go" and "understand". They do not in and of themselves tell the Court that Lilly intended to discriminate against Plaintiff. Much less do they reflect an animus against him for being Puerto Rican. Absent any context— other than being obnoxious— there is nothing to link the remarks to a discriminatory animus. Torres has not set forth specific facts to support the conclusion that these alleged comments were directly tied to his termination or a discriminatory animus of YRC. See e.g. Ayala Gerena, 95 F.3d at 96 (term "black mafia" not used in connection with employment decision); González v. El Día, Inc., 304 F.3d 63 (1st Cir. 2002)(unknown timeframe or context of remark); Delanoy v. Aerotek, Inc., 614 F.Supp.2d 200 (D.P.R. 2009)("old guy" comment had no clear context related to adverse employment action); Patten, 300 F.3d at 25 (comments referring to plaintiff's disability did not provide assurance that termination was due to

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

discrimination); Torres Alman v. Verizon Wireless P.R., Inc., 522 F.Supp.2d 367 (D.P.R. 2007)(comments that plaintiff was "old and worthless and should leave" is stray remark, not direct evidence); Colóm–González v. Black & Decker, PR, LLC., 193 F.Supp.2d 419, 422 (D.P.R.2002) ("old man", "grandfather" and "uncle" remarks were "nothing more than stray remarks which fail to satisfy [plaintiff's] burden of production of direct evidence."). Compare with Zampierollo, 999 F.3d at 51 (decisionmaker stating that he wanted to "rejuvenate" the workforce when asked about the reason for the adverse-employment decision); Febres, 214 F.3d 57 at 60 (employer's admission that age was one the criteria used to determine which employees would be retained); Tamayo v. Banco Santander de P.R., 552 F.Supp.2d 172 (D.P.R. 2007) (decisionmaker's comments regarding the problems created by recruitment of foreign employees).

In the absence of direct evidence of discrimination, a plaintiff claiming relief for discrimination under Title VII must satisfy the burden-shifting framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F.Supp.2d 351 (D.P.R. 2012). Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. McDonnell Douglas, 411 U.S. at 802.  To establish a *prima facie* case of discrimination under this framework, plaintiff must prove the following elements: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) "after the plaintiff's departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work." Cerezo-Martin v. Agroman, 213 F.Supp.3d 318, 324 (D.P.R. 2016) (citing Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (2000)); see also Irizarry Santiago v. Essilor Industries, 982 F.Supp.2d 131 (2013); San Miguel v. Nesco Redondo, S.E., 394 F.Supp.2d 416, 423 (1st Cir. 2005)(collecting cases).

YRC does not contest that Plaintiff meets at least the first two (2) prongs of the McDonnell Douglas framework. Docket No. 68 at p. 12. Torres is in a protected class because he is Puerto Rican (Zayas-Ortiz, 878 F.Supp.2d at 355; Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 97-98 (1st Cir. 1996)), and he suffered an adverse employment action when he was terminated (SUF ¶ 89).

YRC argues that Torres does not meet the third prong—being qualified for the position— because he did not comply with YRC's policies on the use of corporate credit cards. However, the

undisputed facts point elsewhere. Torres was clearly qualified for the position of Caribbean Director of Sales and Operations, which he held since 2011. SUF ¶¶ 15, 18. Other than the issue that ultimately led to his termination, there is absolutely no evidence that Torres was otherwise unqualified for the job. Indeed, YRC does not contest that Torres had an excellent sales record and won awards for his work. ASMF ¶¶ 48, 52. It is also uncontested that, throughout his 19 years of employment, Torres was promoted and received salary raises. SUF ¶¶ 14, 15, 18. "The First Circuit Court of Appeals has repeatedly held that evidence of increased responsibility over time, positive feedback and pay increase— even if it does not extend right up to the time of discharge— satisfies the "qualified" element of a *prima facie* case". Falero Santiago, 10 F.Supp.2d at 96 (citing Smith, 40 F.3d at 15, n.4); Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 673 (1996) (citations omitted) (evidence of promotions and pay raises support inference that employee's job performance was adequate).

This takes the Court to the fourth and final prong of a *prima facie* case. It is uncontested that YRC had a continuing need for Torres' services because he was replaced by another employee, Ángel Colón. SUF ¶¶ 91-92; Docket No. 46, ¶ 15. But the record is devoid of any evidence regarding Colón's qualifications which is necessary to determine whether Torres was replaced by someone of roughly equivalent attributes to perform substantially the same work. And, in any event, there is no dispute that Torres was replaced by a Puerto Rican who belongs to the same protected class. Id. San Miguel, 394 F.Supp.2d at 424 ("Because plaintiff was replaced by a Puerto Rican female, a member of the same protected class, Plaintiff cannot establish the fourth element of the McDonnell Douglas prima facie case"); compare with Zayas-Ortiz, 878 F.Supp.2d at 355 (fourth prong met because Puerto Rican plaintiff was replaced by Englishman); Mulero-Rodríguez, 98 F.3d at 674 (fourth prong met because Puerto Rican plaintiff was replaced by a Cuban). The Court's analysis could end here as Plaintiff cannot meet the last prong of a *prima face* case of discrimination. However, the Court indulges Torres by completing the analysis under McDonnell Douglas.

Assuming, *arguendo*, that Torres could establish a *prima facie* case of discrimination, then the McDonnell Douglas framework would shift the burden to the employer, who must proffer a legitimate non-discriminatory business reason for the termination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253 (1981). The employer's burden is one of production not persuasion— "the defendant need not persuade the court that it was actually

motivated by the proffered reasons." Id. at 254. The employer's duty is to establish through admissible evidence the reasons for its actions which support a finding that illegal discrimination was not the cause of the termination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). An employer can show this by articulating that a legitimate, nondiscriminatory reason justified the termination. Pagano v. Frank, 983 F.2d 343, 349 (1st Cir. 1993).

YRC contends that Torres was terminated due to his use of the corporate credit card at an adult entertainment establishment, his failure to submit expense reports from May 2019 to September 2019, and his failure to reimburse the Company $27,678.00 for expenses incurred with the corporate credit card during a four-month period. It is an uncontested fact that YRC's policies establish that employees must use good judgment when using their corporate credit cards for entertainment purposes and that they had to select appropriate business settings. SUF ¶¶ 25, 29; Docket No. 69-8. The policies provide specific examples of what constitutes an appropriate venue to entertain clients to strengthen business relationships; a gentlemen's club is not one of such venues. Id. YRC's policies also establish that expenses charged to the corporate credit card must be submitted for approval within twenty (20) days from the transaction. SUF ¶ 27. And these policies state that employees who fail to comply are subject to corrective actions such as termination and monetary restitution. SUF ¶¶ 25-27. YRC presented competent evidence in the form of affidavits, policies, and other documents in support of the non-discriminatory reason for the termination. YRC has met the burden of production under McDonnell Douglas. See Falero Santiago, 10 F.Supp.2d at 95 (citing Ruiz v. Posadas de San Juan Assoc., 124 F.3d 243, 248 (1st Cir. 1997) ("[t]he employer need only produce enough competent evidence, *taken as true*, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action.") (emphasis in the original).

Under McDonnell Douglas, once the employer has proffered a non-discriminatory reason for termination, the burden shifts back to the plaintiff who must show that the reason proffered by the employer is a mere pretext or "coverup" for a discriminatory decision. McDonnell Douglas, 411 U.S. at 805; Hicks, 509 U.S. at 515; LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993). In this final step of the McDonnell Douglas framework, Plaintiff is "not assisted by a presumption of discrimination […] 'the factual inquiry [requires] a new level of specificity'." Falero-Santiago, 10 F.Supp.2d at 98 (citing Burdine, 450 U.S. at 255). Plaintiff must present enough evidence to sustain both (1) that the reason for the termination was pretextual and (2) that

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

the true motive was discrimination based on national origin. Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1ˢᵗ Cir. 1999); Hicks, 509 U.S. at 515; Smith, 40 F.3d at 16. Both can be established with the same evidence, but the evidence must be sufficient for a reasonable factfinder "to infer that unlawful discrimination was a determinative factor in the adverse employment action." Feliciano de la Cruz, 218 F.3d at 6; Smith, 40 F.3d at 16. There is no "mechanical formula" to determine whether a plaintiff's purported evidence of pretext and discriminatory animus is enough to avoid summary judgment. Feliciano de la Cruz, 218 F.3d at 6. To determine whether summary judgment is appropriate, all the circumstantial evidence of discrimination must be weighed, "including the strength of the plaintiff's prima facie case and the employer's proffered reasons for its action, mindful that 'everything depends on the individual facts'." Feliciano de la Cruz, 218 F.3d at 7.

To prove pretext, plaintiff must do more than just undercut the employer's explanation for the discharge by casting doubts as to the articulated reason. Falero-Santiago, 10 F. Supp. 2d at 99. The important issue is not whether the reasons for the termination are real, but whether the decision makers believed them to be real. Mulero-Rodríguez, 98 F.3d at 674. "Title VII does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of [supervisors], unless the facts and circumstances indicate that discriminatory animus was the reason for the decision." Falero-Santiago, 10 F.Supp. at 98 (citing Smith at 16). Put differently, "[c]ourts may not sit as super personnel departments, assessing the merits— or even the rationality— of employer's non-discriminatory decisions." Mesnick, 950 F.3d at 825. A court's role is not to judge the fairness of the employment decision, but to assure that discrimination was not a factor in the decision process. Rodríguez-Cuervos, 181 F.3d at 21 (citing Mesnick, 950 F.2d at 825). "[A] party may demonstrate pretext through several methods, to wit, […] that discriminatory comments were made by the decisionmaker […]; that there are weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's legitimate reasons; or, among others, through a showing that an employer has deviated inexplicably from one of its standard business practices." López-Cruz v. FPV & Galindez, PSC, 922 F. Supp. 2d 225, 232 (D.P.R. 2013)(citations omitted); Guillermety Méndez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 181 (D.P.R.1999)(citing Mesnick v. General Electric Co., 950 F.2d 816, 824 (1ˢᵗ Cir. 1991)). A plaintiff cannot rest on "conclusory allegations, improbable references and unsupported speculation" to demonstrate a connection

between the discrimination and the employment decision. Ayala-Gerena, 95 F.3d at 97 (citing Goldman, 985 F.2d at 1116).

Torres attempts to show pretext by pointing to the following: that Torres had been previously authorized by his former supervisor to make credit card charges in gentlemen's clubs for business purposes and that Lilly deviated from his standard practice of inquiring with employees if he had questions as to the charges to the corporate credit card. Docket No. 78, pp. 2-3; ASMF ¶ 168.[2]  But, even if credited, the foregoing does not demonstrate that YRC's reason for termination is false: that Torres did not use the credit card to pay at a gentlemen's club, that he submitted the expense reports from May to September 2019 as required, or that Torres reimbursed over $25,000 in expenses.

Torres makes much of the fact that his former supervisor, Jason Dekker, had approved the use of the corporate credit card for expenses at the gentlemen's club. This is contested per Dekker's Statement under Penalty of Perjury at Docket No. 69-2 at ¶¶ 19-20. And while this may arguably be evidence to sustain that his termination could have been unjustified, it does not establish that the reason for his termination was a pretext for discrimination. It is uncontested that YRC's policies, the existence of which Torres admitted, did not include a gentlemen's club as an appropriate venue for client entertainment. Giving Torres the benefit of a doubt, the fact that such expenses may have been approved in the past by Torres' former supervisor merely shows that such a supervisor failed to comply with YRC's policies.

Further, even though the First Circuit has held that pretext can be demonstrated through a showing that an employer has inexplicably deviated from standard business practices (see López-Cruz, 922 F. Supp. 2d at 232), no such deviation appears to have taken place here. Torres' argument is that if Lilly had questions as to charges on the corporate credit card, his standard procedure would have been to clarify any such questions with the employee, not to initiate an investigation. But the problem with Torres' argument is that the practice he claims that Lilly deviated from applied to the review of expenses *submitted* for approval. The issue here is different.

---

[2]    Torres also relies on arguments that he was stripped from duties, that the reasons provided by Defendants for the termination were fabricated, and that Defendants relied on a sham affidavit provided by Lilly after his deposition. These do not prove pretext. The issue as to whether Torres may have been stripped of some of his duties is discussed and rejected below in the section regarding the hostile work environment claim. And Torres' unsubstantiated and bare contentions that the reasons for termination were fabricated and that Defendants rely on a purported sham affidavit are legally insufficient to prove pretext.

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

Torres did not submit expenses for approval; these were left in draft in the Coupa System so Lilly never received them. See SUF ¶¶ 72-74. The purported standard business practice for Lilly to resolve questions as to charges submitted for approval is not at issue in Torres' case.

Finally, Lilly's purported comments (already rejected as direct evidence of discrimination) cannot be deemed as evidence of pretext either. While generalized 'stray remarks' may serve to prove certain bias against a protected class, they "normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance." Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001); Zegarra v. D'Nieto Uniforms, Inc. P.R., 623 F.Supp.2d 212, 229 (D.P.R. 2009) (stray remarks standing alone do not prove that the articulated reason for an employment decision is pretextual). "Sporadic instances of rude behavior, without more, do not comprise competent proof of nationality-based discrimination" Pagano, 983 F.2d at 349. The question is whether Lilly's purported comments denigrate Puerto Ricans and were linked to the decision to terminate Torres. There is no evidence on record to suggest that Lilly had any sort of discriminatory animus against Puerto Ricans. Nothing about Lilly's remarks "suggest to an objectively reasonable observer that they constituted expressions of discrimination based on national origin." Ramírez Aguirre v. Ranger American, 330 F.Supp.2d 52 (D.P.R. 2004). If anything, these comments could be associated with a bias towards Spanish speaking people overall, but not specifically against Puerto Ricans. There is nothing in the record to suggest that any such comments were in any related to the decision to terminate Torres.

In sum, with the evidence on the record, Plaintiff cannot demonstrate that the reason articulated by Lilly— Torres' violation of YRC's credit card policies— is a coverup for discrimination or that the true motive for the termination was discrimination based on his national origin. Given the undisputed facts, Plaintiff's Title VII claim of national original discrimination is not actionable and should not survive summary judgment.

**2. Race**

Torres claims that his employer discriminated against him based both on national origin and race. It has been held in this District that being Puerto Rican "demonstrates membership in a protected class for **national origin discrimination**." Zayas-Ortiz v. Becton Dickinson Caribe, Ltd., 878 F.Supp.2d 351, 355 (D.P.R. 2012)(citing Aguayo v. Napolitano, 810 F.Supp.2d 406(D.P.R.2011)(emphasis provided)). The only allegation on the record relevant to a potential claim for race discrimination is Torres' claims that he was subject to racist comments when he was

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

called a "spic". However, Torres admitted that "spic" was a derogatory term used against "Latin Americans like Puerto Ricans" or "Spanish speaking people". Docket No. 78-7, Plaintiff's Deposition, pp. 131-132. Torres' discrimination claim is therefore not based on race. See e.g., Saliceti-Valdespino v. Wyndham Vacation Ownership, 2013 WL 5947140 (D.P.R. 2013)(GAG)("Plaintiff points to nothing beyond his being Puerto Rican to substantiate a claim based on race. Therefore, only his national origin claim survives."). Torres' Title VII discrimination claim based on race is baseless and should be dismissed.

### 3.    Hostile Work Environment

Torres posits that YRC violated Titled VII by creating a hostile work environment. A hostile work environment is "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Syst., Inc. 510 U.S. 17, 21 (1993). To prove a hostile work environment, a plaintiff must demonstrate that he was subjected to severe or pervasive harassment that materially altered the conditions of his employment. Faragher v. City of Boca Raton, 524 U.S. 775 (1998). The conduct must be objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be this way. Id. at 787. There is no "mathematically precise test" to determine the severity or pervasiveness of this conduct; the Court must consider the totality of the circumstances. Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). The Court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is threatening and humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris, 510 U.S. at 23. "[T]he pattern of conduct complained of must be (1) characterized by intimidation, ridicule and insult, not just minor unpleasantness or criticism, (2) offensive to the complainant precisely because of his or her membership to a protected class, and (3) sufficiently burdensome to materially alter the conditions of employment." White v. N.H. Dept of Corr., 221 F.3d 254, 259-60 (1st Cir. 2000). The Court must "distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." Faragher, 524 U.S. at 788.

Torres claims that his supervisors created a hostile work environment in the summer of 2019; as soon as Lilly and Haney began supervising him. Docket No. 44 at ¶ 38. Torres' hostile work environment claim is based on the following incidents: (1) his supervisors stripped him off his duties to negotiate rates and participating in daily operations conference calls; (2) Lilly's mockery of Torres by saying "ándale, ándale, ándale" over the phone, and (3) the fabrication of criminal accusations against Torres without providing him the opportunity to defend himself. Docket No. 78, pp. 42-44; ASMF ¶¶ 239-240. Torres must demonstrate that the environment was so severe and pervasive that it altered the conditions of his employment and created an abusive working environment. With the evidence on the record, this is not possible.

It is uncontested that Torres' salary and benefits were not altered since he began being supervised by Lilly. And even though Torres' allegations regarding the removal of the authorization to provide pricing information and his exclusion from daily operational calls is relevant to the hostile work environment analysis, the only evidence presented by Plaintiff to substantiate this claim is his testimony at deposition. See ASMF ¶¶ 116-121. Further, Torres does not explain whether these duties were assumed by another employee or whether he retained enough work as Director of Sales and Operations. See e.g. Marrero v. Shinseki, 2015 WL 224652 at *6 (D.P.R. Jan. 15, 2015)(although alteration in duties is relevant to hostile work environment claim, lack of evidence leaves the Court to speculate as to who assumed those duties, whether plaintiff was assigned other duties in replacement, and whether she retained sufficient work that fell within the scope of his position); see also e.g. Fernández-Ocasio v. WalMart Puerto Rico Inc., 94 F. Supp. 3d 160, 179 (D.P.R. 2015)(increase in work functions, warnings, and statements from supervisor did not come close to meeting the hostile work environment standard")(citing Colón–Fontánez, 660 F.3d 17, 43-45 (1st Cir. 2011)); Low v. Chu, 2010 WL 4736294, at *8 (N.D. Okla. Nov. 16, 2010), aff'd, 450 F. App'x 700 (10th Cir. 2011)(in hostile work environment claim, redistribution of job responsibilities is clear example of management decisions for which Title VII provides no relief). If anything, as argued by Plaintiff, the elimination of duties affected YRC. Torres claims that YRC's sales decreased between 7% and 15 % because Torres was unable to provide pricing information to customers. ASMF ¶¶ 121-122. Importantly, Torres does not present facts connecting the purported elimination of duties to the fact that he is Puerto Rican and Torres admitted that he never complained to YRC about the elimination of these duties.

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

Lilly's purported mockery allusive to Mexicans or Spanish speaking people without more does not rise to the level of frequency or severity necessary to create a hostile work environment. Torres' contact with Lilly was short lived. Lilly supervised him for little over 4 months, they spoke on the phone around 15 to 20 times, and they never saw each other personally until they met at YRC's Miami terminal on the day of his termination. SUF ¶¶ 19, 25; ASMF ¶ 132; Docket No. 78-6, Plaintiff's Deposition, pp. 102-103. Further, even though such comments, if made, were undoubtedly inappropriate and obnoxious, the remarks without more were not "overtly aggressive or excessively derogatory, […not] combined with any physical activity nor were they made in a context that interfered with [Plaintiff's] ability to do his job." Portugués-Santa v. B. Fernández Hermanos, Inc., 614 F.Supp.2d 221, 237 (D.P.R.2009)(citing Clark County School District v. Breeden, 532 U.S. 268, 271 (2001)). Torres was able to continue performing his duties at YRC despite the alleged mockery and his relationship with Lilly was short lived. Torres never complained to YRC about these comments even though the Company had anti-discrimination policies in place.

Torres also claims that a hostile work environment was created upon the purported fabrication of criminal accusations at the meeting in Miami. ASMF ¶ 114. This isolated incident could have undoubtedly made Torres feel uncomfortable; however, it cannot plausibly be deemed to create "an abusive work environment". See e.g., O'Rourke v. City of Providence, 235 F.3d 713, 732 (1st Cir. 2001)("A plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment—both from an objective and subjective viewpoint.").

In sum, Torres' hostile work environment claim is based on minor unpleasantness, the conduct complained of was not offensive due to his membership to a protected class and was not sufficiently burdensome to materially alter the conditions of his employment. The behavior that Torres now complains of does not rise to the level of the severity and pervasiveness contemplated by Title VII for an actionable claim of hostile work environment. This claim should also be summarily dismissed.

## B.    Supplemental Law Claims

Because I recommend that summary judgment be granted dismissing the Title VII claims over which the Court exercised original jurisdiction, I further recommend that the Court decline to

Torres Seguí v. YRC Inc. et al
Civil No. 20-1504 (FAB-GLS)

exercise supplemental jurisdiction over the claims under Puerto Rico laws and to dismiss those claims without prejudice. See Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir.1992) (quoting Cullen v. Mattaliano, 690 F.Supp. 93 (D.Mass.1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that the federal cause of action is [dismissed] ... the pendent state claims should be dismissed.")); Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 190-191 (1st Cir. 2011).

### IV.    Conclusion

For the reasons discussed above, no reasonable juror could find that Torres was discriminated against in violation of Title VII. The undersigned recommends that Defendants' Motion for Summary Judgment be **GRANTED**, that Plaintiff's discrimination claims under Title VII be dismissed with prejudice and that his state law claims be dismissed without prejudice.

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections constitutes a waiver of the right to review by the District Court and claims not preserved by objections are precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Services, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 5th day of August 2022.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

17