**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

PEDRO TORRES-SEGUÍ,

    **Plaintiff,**

            **v.**                **Civil No.** 20-1504 (FAB)

YRC INC., *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge.

    Defendants YRC Inc., YRC Worldwide, Inc. and New Penn Motor Express, LLC ("defendants") moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). (Docket No. 68.) Plaintiff Pedro Torres—Seguí ("Torres") opposed the motion. (Docket No. 78.) Defendants' motion for summary judgment was referred to a magistrate judge for a Report and Recommendation ("R&R"). (Docket No. 82.) That R&R recommended granting summary judgment to defendants on all federal claims. (Docket No. 104.) The Court adopted the recommendations of the R&R as to the federal claims, dismissed the federal claims with prejudice, (Docket No. 120,) and entered Partial Judgment (Docket No. 121). The Court now exercises supplemental jurisdiction over Torres' state law claims. See 28 U.S.C. § 1367(a); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). For the reasons set forth

below, defendants' motion for summary judgment on Torres' state
law claims is also **GRANTED**.

## I.  Background

The Court will assume familiarity with the facts as described
in the magistrate judge's R&R.  See Docket No. 104.  The basic
outline is that Torres worked for a shipping company for several
years and came under the supervision of a new manager in the summer
of 2019.  Id. at pp. 2—4.  The new manager became aware that Torres
had multiple charges on a corporate credit card, totaling more
than $25,000, for which he had not properly submitted expense
reports.  Id. at p. 4—5.  The payments were to a vendor listed as
"the Bulon Group," which was discovered to be a strip club.  Id.
at p. 4.  The new manager summoned Torres to a meeting at the
company's office in Miami, where Torres confirmed that he had used
the card at that establishment.  Id. at p. 5.  Torres was terminated
at the meeting.  Id.

Torres brings state law claims against defendants pursuant to
Puerto Rico Law 100, P.R. Laws Ann. tit. 29, § 146, Puerto Rico
Law 80, P.R. Laws Ann. tit. 29, § 185a, and Article 1802 of the
Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, the latter
for defamation, false imprisonment, and intentional infliction of
emotional distress.  (Docket No. 1.)

## II.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a Court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).  Courts draw all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations.  McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014).

## II.  Analysis

### A.  Puerto Rico Law 80 and Law 100

Puerto Rico Law 80 and Law 100 both bar certain adverse employment actions and have similar burden shifting legal frameworks.  "Law 100 is a broad antidiscrimination statute analogous to Title VII in many respects." Pérez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 26 n.10 (1st Cir. 2011) (citing Monteagudo v. Asociación de Empleados del Estado Libre Asociado de P.R., 554 F.3d 164, 169 n.3 (1st Cir. 2009)).  Law 100 forbids employment discrimination based on national origin and

race, among other categories.  See P.R. Laws Ann. tit. 29, § 146.
Puerto Rico Law 80 prohibits dismissal of employees without just
cause.  See P.R. Laws Ann. tit. 29, § 185b.  A discharge made by
mere whim of the employer or without cause related to the proper
and regular operation of the establishment is not considered as a
discharge for just cause.  Id.  The statute permits dismissals for
a number of reasons, however, including an employee's improper or
disorderly conduct, negligent attitude towards his work, and
violations of the employer's rules and regulations.  Id.

        Because the Law 80 and Law 100 legal frameworks are
similar, the claims will be addressed together.  Pursuant to
Law 80, a plaintiff who alleges that he or she was directly or
constructively discharged shifts the burden of proof to the
employer to show that the discharge was justified.  See García-
García v. Costco Wholesale Corp., 878 F.3d 411, 420 (1st Cir. 2017)
(citing Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 140
(1st Cir. 2017)).  Equivalently, pursuant to Law 100, once an
employee shows that he or she has been actually or constructively
discharged and alleges that it was for a discriminatory reason,
"the burden of persuasion shifts to the employer to show by a
preponderance of the evidence that the discharge was made for good
cause as contemplated by Law 80." Hoyos v. Telecorp Commun., Inc.,
488 F.3d 1, 6 (1st Cir. 2007) (citing Velázquez-Fernández v. NCE

Foods, Inc., 476 F.3d 6, 11 (1st. Cir. 2007) & Álvarez-Fonseca v.
Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998)).
Thus the employer's burden in this case is to show that Torres was
dismissed for good cause.  See García-García, 878 F.3d at 420;
Hoyos, 488 F.3d at 6.

        Pursuant to the Law 80 framework, once the employer shows
it had good cause to discharge the employee, "the employee must
rebut the showing of good cause."  Echevarria, 856 F.3d at 140
(citing Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir.
2015)).  And within the Law 100 framework, "if the employer carries
its burden, the burden of persuasion shifts back to the employee
to   demonstrate   that   the   discharge   was   motivated   by
discrimination."  Hoyos, 488 F.3d at 6 (citing Velázquez-
Fernández, 476 F.3d at 11).  Thus, Torres must rebut his employer's
showing of good cause to prevail on a Law 80 claim, and he must
demonstrate   that   the   discharge   was   actually   motivated   by
discrimination to prevail on a Law 100 claim.  See Echevarría, 856
F.3d at 140; Hoyos, 488 F.3d at 6.

        i.   **Employer's Good Cause**

        The defendants argue that they have shown good
cause for Torres' termination because he violated their policies
by using his corporate credit card for personal adult entertainment
expenses,   did   not   submit   expense   reports   within   the   timeline

required, and carried a balance of unreimbursed expenses of $27,678 for four months until he was confronted by management.   (Docket No. 68 at p. 19.)

"To meet the good-cause prong, [an employer] 'need only demonstrate that it had a reasonable basis to believe that [the employee] has engaged in one of those actions that the law identified as establishing such cause.'" García-García, 878 F.3d at 420 (quoting Echevarría, 856 F.3d at 140).   "The termination need only be 'non-arbitrary' and bear 'some relationship to the business' operation.'" Id. (quoting Pérez, 804 F.3d at 9).   While "Law 80 generally refers to multiple episodes of misconduct as constituting good cause, 'Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences.'" Hoyos, 488 F.3d at 6 (quoting González v. El Día, Inc., 304 F.3d 63, 75 (1st Cir. 2002)).

The defendants have established good cause; their evidence shows they had a reasonable belief that Torres had violated their expense policies, at some considerable cost.   See Dockets 78—2, 78—3 & 78—4; see also García-García, 878 F.3d at 421 ("Undeniably, Costco's proffered reason—a costly and unexplained $146,000 inventory discrepancy within the department García

managed—is so severe that Costco could not have been 'expected to await further occurrences.'").

### ii.  **Employer's Offered Reason as Pretext**

Torres must rebut his employer's showing of good cause to prevail on a Law 80 claim, and he must demonstrate that the discharge was actually motivated by discrimination to prevail on a Law 100 claim.  See Echevarría, 856 F.3d at 140; Hoyos, 488 F.3d at 6.

To rebut the employer's showing of good cause, "[an employee] ha[s] the burden to adduce probative evidence that [the employer] did not genuinely believe in or did not in fact terminate [the employee] for the reason given." Pérez, 804 F.3d at 11.  And where a plaintiff has "adduced no significantly probative evidence that his discharge was motivated by [discriminatory animus]," summary judgment on a pending Law 100 claim is appropriate.  See Dávila v. Corp. de Puerto Rico Para La Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007).

Defendants argue that Torres has not adduced probative evidence that his discharge was motivated by his race or national origin as required pursuant to Law 100, or that his termination was based on a mere whim.  (Docket No. 68 at pp. 19—21.)  Torres did not address his state law claims directly in his opposition to the motion for summary judgment, but his federal law

arguments are applicable.  (Docket No. 78 at pp. 44—52.)  Torres
argues that his employer's explanation for his termination is a
pretext because (1) his previous supervisor allowed the expenses
as a business expense and he in good faith believed they were
within his authority; (2) his new supervisor used Mexican slang on
the phone with him and mocked his accent, and at the meeting where
he was terminated, one of the security investigators mocked his
being a Spanish speaker and called him by a slur for Spanish—
speaking people; and (3) he was not allowed to set tariff rates
with customers as he had in the past.  Id. at pp. 47—52.  Each of
Torres' proposed arguments, however, fails to rebut his employer's
showing of good cause.

        First, whether Torres had a good faith belief or
actual permission from his prior supervisor to use the corporate
credit card as he did does not cast doubt on his new supervisor's
genuine belief that the expenses and Torres' actions were a
violation of company policy.  See García-García, 878 F.3d at 422
("[E]ven a 'perceived violation' is sufficient to rebut an
allegation that the decision to dismiss an employee was made on a
whim.") (citing Hoyos, 488 F.3d at 10).  Torres has not adduced
evidence that calls into question the integrity of the
investigation into his expenses, and thus he does not, and cannot,
rebut that the investigation and its conclusions served as good

cause to terminate him. See Pérez, 804 F.3d at 10-11 (holding that plaintiff did not rebut employer's showing of good cause by "arguing that Horizon came to several incorrect conclusions over the course of its investigation" when what was necessary was "to adduce probative evidence that Horizon did not genuinely believe in or did not in fact terminate Pérez for the reason given.").

        Second, the alleged derogatory and mocking language by Torres' new supervisor in prior phone calls were stray remarks and not evident of pretext, as noted by the magistrate judge in her R&R regarding Torres' Title VII claim. See Docket No. 104 at p. 13; Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001) ("Mere generalized 'stray remarks,' arguably probative of bias against a protected class, normally are not probative of pretext absent some discernible evidentiary basis for assessing their temporal and contextual relevance."); cf. Pérez-Cordero, 656 F.3d at 26 n.10. The security investigator's comments during the Miami meeting are irrelevant as he was not a decision—maker in Torres' termination. See Docket No. 78—6 at p. 54—55; Straughn, 250 F.3d at 36 (The probative value of 'stray remarks' in a pretext inquiry is "circumscribed if they were . . . made by nondecisionmakers . . . .") (quoting McMillan v. Massachusetts Soc'y for Prev. of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998)).

Torres' third allegation, that he lost the ability to set tariff rates once he came under new supervision in 2019, is presumably an argument that his employer was deviating from its standard business practices.  See López-Cruz v. FPV & Galindez, PSC, 922 F. Supp. 2d 225, 232 (D.P.R. 2013) ("a party may demonstrate pretext . . . through a showing that an employer has deviated **inexplicably** from one of its standard business practices.") (emphasis added).  But this deviation by YRC Inc. was not without explanation — Torres himself acknowledged in his deposition that there was a reorganization happening at that time and "they were changing everything, you know, they took, eventually they took over New Penn's so, a lot of changes" and "once I got released of that they have like a pricing team, and they decide. Is a pricing team in, I think they were in corporate, over at Kansas." (Docket No. 78-7 at pp. 102 and 149—50.)  Changing duties alone does not suggest discrimination when Torres admits that the company was going through a valid reorganization after YRC, Inc. acquired New Penn.  See Hoyos, 488 F.3d at 10 ("As to the reorganization, Hoyos has introduced no evidence that the reorganization was a sham or was intended to target him because of his [identity].").

Torres thus does not rebut his employer's good cause for his termination, fatal to his Law 80 claim, nor does he

adduce probative evidence that his termination was discriminatory, dooming his Law 100 claim.  Accordingly, summary judgment is **GRANTED** to defendants on Torres' Law 80 and Law 100 claims.

### B.     Article 1802 Claims

Article 1802 of the Puerto Rico Civil Code, Puerto Rico's general tort statute, states that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."  P.R. Laws Ann. tit 31, § 5141.  Plaintiffs may not obtain recovery from damages pursuant to article 1802 if the conduct that forms the basis for their article 1802 claim is addressed expressly by specific labor or employment legislation.  See Franceschi-Vázquez v. CVS Pharmacy, 183 F. Supp. 3d 333, 344-45 (D.P.R. 2016) (Besosa, J.) (cataloguing cases).  "A wrongfully terminated employee cannot recover [tort] damages for the termination itself.  However, 'if other independent tortious actions concur with the discharge, the employer may be held liable for said conduct.'"  Soto-Lebrón v. Fed. Express Corp., 538 F.3d 45, 55 (1st Cir. 2008) (quoting Porto v. Bentley P.R., Inc., 132 D.P.R. 331, 1992 P.R.-Eng. 754,807 (P.R. 1992)) (internal citations omitted).

Torres alleges causes of action for defamation, false imprisonment, and intentional infliction of emotional distress. (Docket No. 1 at pp. 14—15.)  As best the Court can tell, the

factual basis for these claims is the meeting in Miami at which
Torres was terminated.   Id.   Torres cannot recover for the
termination itself, which is exclusively remedied by Law 80, but
the Court will analyze whether Torres has stated a claim for
tortious actions concurrent with the discharge.   See Soto-Lebrón,
538 F.3d at 55.

      **i.   Defamation**

        Torres stated in his deposition that he was the
victim of defamation because he believes people in his industry
know about "the action of the corporate credit card." (Docket
No. 78—7 at pp. 152—57.) When pressed, however, he clarified that
no one had mentioned his use of the card and they had only heard
that he was fired, and Torres confirmed that some of these were
people he told himself. Id. at pp. 152—53. Torres confirmed that
he did not know how people knew that he was fired and made no
specific allegation that the defendants had published the
information. Id. at pp. 154—57. Defamation requires "(1) that
the information is false, (2) that plaintiff suffered real damages,
and (3) in the case of a private figure plaintiff, that the
publication was negligent." García-García, 878 F.3d at 427
(quoting Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 98
(1st Cir. 1996)). That Torres was fired is not false, and he has
adduced no evidence that any information was published by the

Civil No. 20-1504 (FAB)                                                    13

defendants.  <u>See</u> Docket No. 78—7 at pp. 152—57.  His claim for
defamation thus fails, and summary judgment on this claim is
**GRANTED** to defendants.

### ii.  Intentional Infliction of Emotional Distress

Torres does not adduce in his own testimony that he
suffered severe emotional distress as a result of his meeting in
Miami with the defendants.  <u>See</u> Docket No. 78—7 at pp. 158—60
(Torres confirms he did not see any psychologist, psychiatrist,
therapist, or doctor following the Miami meeting, seeking only
spiritual help at church).  Torres' damages are at worst that he
felt depressed for a month, not wanting to go outside or leave his
room, and that he is in good health but "lost my hair." <u>Id.</u>  He
did not get diagnosed with any mental health disorder and was not
prescribed any medication.  <u>Id.</u>  Intentional infliction of
emotional distress requires that the plaintiff suffer severe
emotional distress.  <u>See</u> <u>Soto—Lebrón</u>, 538 F.3d at 57.  Torres'
allegations fall far below what is necessary to satisfy these
elements, even assuming all other elements are present.  <u>Cf.</u>
<u>Serrano v. Nicholson Nursery, Inc.</u>, 844 F. Supp. 73, 76 (D.P.R.
1994) ("Even under the more liberal standard [for emotional
distress] under Puerto Rican tort law, there must still be a
showing that in some appreciable measure the health, welfare and
happiness of claimant were really affected.").  Accordingly,

summary judgment is **GRANTED** to defendants as to plaintiff's claims
of intentional infliction of emotional distress.

### iii. False Imprisonment

The tort of false imprisonment requires intentional
restriction of a person's freedom of movement.  See Segarra-Jiménez
v. Banco Popular, Inc., 421 F. Supp. 2d 452, 461 (D.P.R. 2006),
aff'd sub nom. Segarra-Jiménez v. Banco Pop. de Puerto Rico, 235
Fed. Appx. 2 (1st Cir. 2007) (unpublished).  Besides his conclusory
statement that "unknown persons did not allow the Plaintiff to
leave," there is no adduced evidence that Torres' freedom of
movement was restricted.  See Docket No. 78—1 at p. 66, ¶ 222;
McGrath, 757 F.3d at 25.  Torres testified in his deposition that
the door was behind him as he sat at the table at the Miami meeting.
See Docket No. 78—7 at p. 112.  Therefore, the exit was not blocked.
See Segarra-Jiménez, 421 F. Supp. 2d at 461 (plaintiff's movement
not restricted where "[h]is attempts to leave were not curtailed
by Defendants; indeed, he did not attempt to leave.").  The
statement that the security investigator was going to call the
police if Torres did not make a payment arrangement "does not turn
said meeting into an illegal detention.  Such statement . . . did
not obstruct Plaintiff's capacity to leave at any time."  Id.
Accordingly, summary judgment is **GRANTED** to defendants as to the
claim for false imprisonment.

**IV.  Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment on Torres' state law claims is **GRANTED.**  (Docket No. 68.)  Torres' state law claims are **DISMISSED with prejudice.**

In accordance with the Partial Judgment on plaintiff's federal claims entered on September 15, 2022 (Docket No. 121) and this Opinion and Order, this case is **DISMISSED with prejudice** in its entirely.  A final judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 28, 2022.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE